| ¡¿WHIPPLE, J.
The City of Kenner (the City) and Dominic Weilbaecher, acting mayor of Ken-ner and a qualified elector (collectively, plaintiffs), bring this action objecting to a special election under LSA-R.S. 18.T409(A)(1).[1] W. Fox McKeithen (McKeithen), Secretary of State, was named as defendant pursuant to LSA-R.S. 18:1402(C). Nick Congemi, Police Chief of Kenner intervened, aligned himself with McKeithen, and asserted that he was the correct party to represent the City.
The trial court allowed the intervention to go forward but ruled that Weilbaecher, as a qualified elector, had the capacity to bring the suit. The case was tried solely on documentary evidence, including all exhibits attached to pleadings and memoran-da. Plaintiffs sought both a writ of mandamus ordering McKeithen to conduct the election on September 18, 2004, and an injunction prohibiting the election scheduled for March 9, 2004, from going forward.[2] The trial court denied both the writ of mandamus and the injunction. Plaintiffs appeal.
FACTUAL AND PROCEDURAL BACKGROUND
Louis Congemi (Congemi), mayor of Kenner, was elected to the Jefferson Parish Council. Because he could not simultaneously hold both offices, he advised McKeithen on December 15, 2003, that he was resigning |aas mayor effective December 31, 2003. McKeithen’s office advised the City on December 16, 2003, that the governing authority should call a special election to fill Congemi’s unexpired term on or before December 29, 2003.
The City is governed by a home rule charter adopted July 1, 1974. The charter provides a procedure for filling a vacancy in the office of mayor in Section 3.06. That section provides in pertinent part:
If the Mayor’s unexpired term is greater than one (1) year, within ten (10) days from the creation of the vacancy, the council shall call a special election to be held within sixty (60) days from the creation of the vacancy .... If the Council fails to call the election within the time herein provided, the Acting-Mayor shall call the election within two (2) days of the expiration of the time herein provided for the Council to call the election. Prior to this election, the vacancy shall be filled by the President of the Council as Acting-Mayor.
At the time the charter was adopted, Ken-ner voters expressed their preference for filling the vacant office with haste by specifying that an election be held within 60 days of the creation of the vacancy. The procedure outlined in the charter now conflicts, however, with a later-enacted state statute, LSA-R.S. 18:402, which sets uniform dates for elections statewide. That statute sets specific dates for general and special elections to fill a vacancy in office. In 2004, the only legally permissible dates for those elections are March 9 and September 18. See LSA-R.S. 18:402(E)(l)(b-c) & (G). Selection of a date is further *41 complicated by LSA-R.S. 18:402(E)(1), which requires that the special primary election be held “on the first of the following days that is not less than eleven weeks after the date on which the proclamation calling the special primary election was issued.”
|4The City Council met on December 18, 2003. Weilbaecher, then City Council President, moved that the council adopt a resolution calling for a special election to be proclaimed for March 9 to fill the vacancy. Before the vote, however, he stated that the council had received opinions from the City Attorney and the Secretary of State, and that he was not comfortable voting on the matter until he could be certain that the opinions conformed. He suggested voting against the motion at that time and taking the matter up again in a special meeting before the expiration of the council’s time period to make the proclamation, stating:
I’ll make a commitment that according to the charter we have a certain time period that we have to call this election within and that we’ll do whether it’s through a special meeting before the time period expires or not. So with that, I’d ask that until we determine whether or not some of these questions are answered, we vote against this with a commitment that we actually take this up in the appropriate time frame before the dates expire according to the charter. So with that, I’ll ask that we vote against that, this at this time.
The motion to make the proclamation failed by a vote of two to four.
Congemi then asked if a special meeting was planned to reconsider the proclamation because December 22, 2003, was the last possible date to call a March 9 election. Weilbaecher responded, “I think if we have to call an election within a certain time period, I’m definitely committed to making that happen. Yes sir.”
One of the City’s attorneys was then asked for an opinion regarding “the date and what we have to do.” He responded that there could not be a special election on March 9 unless the council called the election by December 22. Thus, the council was well aware that the window of opportunity for a March 9 election closed on December 22.
|KOn December 19, Congemi called a special council meeting for December 22. A quorum did not appear for the meeting. Congemi then issued a proclamation himself calling for the March 9 election.[3]
On December 29, the council held a special meeting and voted four to three to issue a proclamation calling for a September election. Because this was a special meeting, however, a two-thirds vote, i.e., five of the seven council members, was required. Kenner Home Rule Charter, Section 2.22. Despite the lack of the required votes, a proclamation was forwarded to McKeithen calling for a September election.
Three more proclamations followed. On December 30, Congemi delivered another proclamation to McKeithen calling for a March election. On January 7 and January 11, in two separate proclamations, Weilbaecher, who was now acting mayor, called for a September election.
*42 McKeithen was faced with five different proclamations, none of which complied precisely with legal provisions. The December 22 proclamation by Congemi was made during the ten-day period for the council to act set forth in Section 3.06 of the home rule charter. The December 29 proclamation by the council was made despite an invalid vote. The December 30 Congemi proclamation, though made during the two-day period for the mayor to act, called an election in fewer than eleven weeks. And the January Weilbaecher proclamations were beyond the time limit for either the council or the mayor to act. After consultation with the Louisiana | ^Attorney General’s office, McKeithen decided to call the March election, being of the opinion that the December 22 proclamation most closely followed the wishes of the people of Kenner.
LAW AND ANALYSIS
When an elected official properly tenders a notice of resignation specifying a prospective effective date, “an anticipated vacancy shall be deemed to have occurred on the date the notice ... becomes irrevocable.” LSA-R.S. 18:583(C). The notice becomes irrevocable when received by the secretary of state, “at which time an anticipated vacancy shall be deemed to have occurred.” R.S. 18:583(B)(3). In this case, that date was December 15.
If we construe Section 3.06 of the home rule charter in pari materia with R.S. 18:583, as McKeithen and the Attorney General did, the council had ten days after December 15, the date of the anticipated vacancy, to call a special election. As the tenth day fell on a legal holiday, the council actually had until December 29. But because of the eleven-week provision of 18:402(E)(1), the council could not call a March election after December 22.
At the council meeting of December 18, Weilbaecher led those present to believe he was committed to calling a timely special meeting of the council so that the election could go forward as soon as possible, which was the expressed intent of the Kenner voters in the home rule charter. Yet when Congemi called a special meeting for December 22, Weilbaecher and those aligned with him did not attend, thereby rendering it impossible for the council to call a March election.
|?At that point, Congemi was faced with interpreting the charter to give meaning to the voters’ intent in Section 3.06 to fill vacancies in elected offices quickly. Section 3.06 states that if “the Council fails to call the election within the time herein provided, the Acting-Mayor shall call the election.” By refusing to show up at the December 22 meeting, Weilbaecher and the council members aligned with him made it clear that they had no intention of abiding by the agreement in the December 18 meeting to call a March election by meeting on or before December 22. In Congemi’s opinion, this constituted a failure by the council to call the election within the time provided. He thus issued a proclamation calling for a March election himself.
We agree that the refusal of the council to honor its agreement of December 18 to call a March election was a failure to call the election within the time provided, thus clearing the way for a mayoral proclamation. We note that Section 3.06 calls for the “Acting-Mayor” to make the proclamation when the council fails to do so. However, we believe that Congemi had the authority under the charter to make the proclamation for the following reasons.
At the time Kenner voters adopted the home rule charter; the concept of “anticipated vacancy” was not yet law. The charter envisioned a vacancy occurring when the elected official left office. Thus, Section 3.06 provides that the “Acting-Mayor” call the election if the council fails *43 to do so^because the elected mayor would have already vacated the office. The timing of Congemi’s notice to McKeithen, however, created a situation where there was an anticipated vacancy but no “Acting-Mayor” until 12:01 a.m. on | sJanuary 1. An absurdity would result were we to say that the mayor whose resignation was not effective until midnight, December 31, 2003, could not fulfill the duties set forth in the charter for the acting mayor. When they adopted the charter, the voters of Kenner expressed their wish to have someone backing up the council, in case it failed to do its duty in calling the election. Under the facts presented herein, that backup person is the mayor, whether he is called acting mayor, de facto mayor, or just plain mayor between the date of the anticipated vacancy and the effective date of his resignation.
CONCLUSION
The trial court denied the writ of mandamus, finding McKeithen had no ministerial duty required by law to conduct a special election to fill the vacancy on September 18. See LSA-C.C.P. art. 3863. For the reasons set forth above, we affirm the denial of the writ of mandamus.
The trial court also denied the injunction, stating that plaintiffs had failed to prove irreparable harm. We agree with plaintiffs that injunctions may be issued where specifically provided by law, even if no irreparable injury is shown. LSA-C.C.P. art. 3601. We further agree that LSA-R.S. 18:402(E)(3) specifically provides for injunctive relief to prohibit the placing of the name of a candidate in an improperly called election, and thus irreparable harm need not be shown if the party objecting to the election proves it was improperly called. In this case, however, plaintiffs have failed to prove that the election was improperly called. Therefore, we must affirm the trial court’s denial of the injunction.
| sAppeal costs in the amount of $715.63 are assessed to Dominic O. Weilbaecher.
AFFIRMED.
KUHN, J., concurs with additional reasons.
GUIDRY, J., dissents and assigns reasons.

. We note at the outset that venue was not proper in East Baton Rouge Parish. The suit should have been filed in the 24th Judicial District Court in Jefferson Parish, "the district court for the parish where the governing authority calling such special election is domiciled.” LSA-R.S. 18:1404(A)(2); see also 18:402(E)(3). The objection was waived, however, as the parties proceeded to trial without filing an exception raising an objection to venue. See LSA-C.C.P. art. 44.

. The suit involves both the March 9 and September 18 primary election dates and April 17 and November 2 general election dates. For simplicity's sake, however, we shall refer to the elections simply as the March 9 and September 18 elections.

. The minutes of the December 22 meeting are not in the record, nor is the December 22 proclamation. Counsel explained during oral argument in the trial court that he had accidentally attached two copies of the December 30 proclamation to his memorandum instead of the December 22 proclamation. The parties do not dispute that there was no quorum for the December 22 special council meeting and that Congemi issued a proclamation on December 22 calling for a March 9 election.